30 C.C.P.A.(Patents)

## In re VINCENT.

### Patent Appeal No. 4725.

Court of Customs and Patent Appeals.
May 3, 1943.

Mason & Porter, of Washington, D. C. (Charles J. Diller, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

The eight claims of the application for patent here involved, numbered 19 to 26,

inclusive, relate to a process for impregnating cables. The examiner rejected the claims on references which were cited, the Board of Appeals affirmed his decision, and by appeal the applicant brings the case before us for review of the board's decision.

The entire process claimed to be patentable seems to be comprehended within claims numbered 19, 22, and 24 taken together. They read:

"19. A method of treating insulated cable in continuous lengths which comprises continuously passing the cable between surfaces engaging the cable by dry friction in vacuum-sealing relationship into an evacuated space and out of said space through a liquid seal of impregnating composition."

"22. A method as claimed in claim 19, in which the cable is subjected to preliminary heating before entering the evacuated space."

"24. A process as in claim 19, in which the cable is continuously impregnated with a liquid composition under pressure after impregnation in vacuo."

In claim No. 20 the cable is referred to as "paper-insulated." The term "paper" is not used in any other claim, but it appears from appellant's brief, and from the record, that he contemplates only the use of paper as an insulating agent, the paper being wrapped about the cable and becoming an integral part thereof. In claim No. 23 there is a limitation defining the cable as being "electrically heated before entering the evacuated space." It is the only claim in which "electrically" is used but the record indicates that only that method of preheating was contemplated. That limitation, however, is not of importance here.

The specification, as interpreted by the brief of appellant, teaches that the wrapping (paper) forming the covering for the metal conductor cable core, when in contact with the atmosphere, contains a substantial proportion of gas and moisture, which if permitted to remain would greatly impair the efficiency of the cable as an electric conductor, and that the purpose of the alleged invention is to remove the gas and moisture and then impregnate the covering under heat and pressure with a liquid material which will exclude gas and moisture.

As will be seen from the quoted claims (in connection with claim 20), appellant's process, carried out on an apparatus illustrated by drawings, comprises passing a paper wrapped cable through a preheater and thence through vacuum tubes in which latter the wrapper is partially dried and degassed. The cable is then passed through another vacuum tube where further drying and degassing is accomplished and thence through a tube where impregnating liquid is applied. It may be further impregnated by passing it through another tube which is maintained at super-atmospheric pressure. It is then passed down a cooling tube and through a liquid seal. The process is referred to as continuous, the cables being passed through the described apparatus in long lengths.

Two patents are cited as references, viz.:

Minton, 1,322,327, November 18, 1919.

Waldron, 2,137,256, November 22, 1938.

The patent to Minton is for a method and apparatus for continuously coating or impregnating material, such as sheet material, particularly paper for forming roofing felt. Drawings of an apparatus are shown from which it appears that the paper in the form of a web is fed from a roll through a liquid seal of heated mercury from which it passes upwardly into an evacuated chamber over a drying cylinder heated to 281°F, thence downwardly through a liquid seal comprising the heated impregnating liquid and onto a take-up roll.

The patent to Waldron is for a method of inking ribbons used on typewriters and the like. Apparently, the process is much the same as the Minton process, although the apparatus of Waldron differs in structure from the apparatus of Minton. In carrying out Waldron's process the ribbon web is introduced into the apparatus through what is defined in the specification as a "suction tube." From that tube it passes into an evacuated drying chamber wherein are located two electrical heating devices between which the web passes. The heating devices are pressed toward each other by a spring device, but, apparently, do not actually contact the surfaces of the web. From the evacuated drying chamber the web passes in vacuo through the ink which is supported on a liquid seal of mercury. It then passes out through another liquid seal.

In both the references the seal material at the entrance to the vacuum chambers appears to be mercury.

It is noted that illustrative claim No. 19, supra, provides for "passing the cable be-

tween surfaces engaging the cable by *dry friction* in vacuum-sealing relationship." (Italics supplied.) As we understand it, this means that the surfaces of the paper cable covers are forced into direct contact with heating elements. In that respect the process differs from the step described in the Waldron patent wherein the web passes between but does not directly contact the heating elements.

The importance which appellant attaches to the difference so described is in connection with his contention respecting the distinction which he claims should be made between a process using "dry friction," as described, and processes using mercury, as described.

The tribunals of the Patent Office regarded the "mercury seal" of the reference processes as being equivalents, in a patentable sense, of the "dry friction" seal of appellant's process.

The board, referring to the Waldron patent, said: "The mercury seal in the reference is deemed the full equivalent of a dry friction seal as the mercury does not wet the cable."

In the final analysis the question growing out of the distinction between appellant's "dry friction" element and the "mercury seal" element constitutes the only issue in the case. The brief on behalf of appellant discusses the nature of mercury at considerable length.

An affidavit of an apparently competent and disinterested party was introduced after the examiner had finally rejected the claims in which affidavit it is stated that the mercury seal of Waldron is quite unsuitable for use in impregnating cables because—

"(a) there is a danger that globules of mercury would penetrate the interstices of the insulation and be carried on into the apparatus; this would be most undesirable from an electrical standpoint.

"(b) Suitable conditions for the impregnation of cables involve a vacuum chamber working at a low pressure varying from less than 0.1 mm to 10 m.m of mercury and temperatures from 70° to 180° Centigrade. Under such conditions there would be serious risk of the mercury boiling and the vapour entering the vacuum chamber and the impregnating oil becoming contaminated with mercury. Mercury seals, therefore, are very undesirable in such an apparatus and would never be used in practice unless very special precautions were taken against the harmful effects of mercury on the impregnating oil. If it were present in any quantity, the mercury would attack the lead sheathing which was applied subsequently to the impregnated cable."

The board took note of the affidavit, saying: "Applicant has filed an affidavit stating that the use of mercury seals in his process would be objectionable because the cable will absorb some mercury. This may be true but we do not believe that the claims define any patentable distinction over the references, so far as this process limitation is concerned."

Notwithstanding our great respect for the views of the tribunals of the Patent Office, we feel constrained to disagree with the conclusion reached by them respecting claims 19 to 24, inclusive, to which our discussion so far has been confined. It may be conceded that the mercury used in the process defined in the references does not wet the materials, but appellant's process amounts to more than *nonwetting*. By this *dry-friction* step appellant removes moisture already present in the paper, and this step differs from any step shown in the references for the removal of moisture. He also avoids the possibility of globules of mercury penetrating the material with which he impregnates the cables after the drying process has taken place. We do not feel, therefore, that the holding below to the effect that the "mercury seal" in the Waldron reference is the full equivalent of appellant's "dry friction seal" should be sustained. Furthermore, we are of opinion that the difference in appellant's process from the processes defined in the prior art are inventive in character and justify a holding that claims 19 to 24, inclusive, are patentable.

Claims 25 and 26 are dependent on claim 19 but embrace a limitation defining the surfaces which frictionally engage the insulated cable as being the interior surfaces of a rubber mass. They were rejected because it was, in effect, held to be improper to include structural limitations in a process claim. The board said, "If applicant has a new seal, it must not be incorporated in a process claim." At the oral hearing before us counsel for appellant conceded that claims 25 and 26 are "questionable." We think the holding below respecting them is in conformity with the principle of our holding in the case of In re Best, 87 F.2d 475, 24 C.C.P.A., Pat-

ents, 857, and that, as respects those claims, the decision should be sustained.

For the reasons stated, the decision of the board is modified. It is reversed as to claims 19 to 24, inclusive, and affirmed as to claims 25 and 26.